UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 12-cv-62406-Cooke/Hunt

JEFFREY STANLEY,

    Plaintiff,

vs.

BROWARD COUNTY SHERIFF, Gregory Tony,
in his official capacity,

    Defendant.

_____/

## BSO'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The Defendant, Gregory Tony in his official capacity as Sheriff of Broward County ("BSO"), files this Renewed Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(b) and asks this Court to enter judgment in favor of BSO. In support thereof, BSO states:

### Proceedings At Trial

This cause came before the Court during a jury trial, starting on October 2, 2023, and ending on October 4, 2023. At the close of the Plaintiff's case-in-chief, BSO reserved motions without waiver by agreement of the parties and the Court based on the timing and pace of the trial. At the close of all the evidence, but before the case was submitted to the jury, BSO moved for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50.

The Court denied the Motion for Judgment as a Matter of Law, and the case was submitted to the Jury. Over BSO's objections, jury instructions were given that are the subject of a separate motion.[1] By a second Verdict the jury awarded Plaintiff $500,000 compensatory damages and made no reduction for mitigation. The final judgment was entered on October 13, 2023. [D.E. 384].

---

[1] Immediately after this Motion is filed BSO will file in the alternative a Motion for New Trial. [D.E. 395].

This Renewed Motion for Judgment as a Matter of Law asking the Court to enter judgment in favor of the defense notwithstanding the verdict is timely filed, less than 28 days after the final judgment was entered.

### **Legal Standard**

In considering a Motion for Judgment as a Matter of Law, the Court must decide whether, after resolving all the factual disputes and drawing all logical inferences in favor of the nonmoving party, the "facts and inferences so strongly favor one party 'that reasonable people, in the exercise of impartial judgment, could not arrive at a contrary verdict.'" *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (*citing Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1119 (11th Cir. 1992)). As with other dispositive motions, however, a "mere scintilla of evidence does not create a jury question" in the case of a motion for judgment as a matter of law; "there must be a substantial conflict in evidence to create a jury question." *Id*. at 1435. In the instant case, the standard is met and judgment notwithstanding the verdict is warranted.

Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim. See, *Celotex Corp.v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) ("The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"); *Bogle v. Orange County Bd. of County Comm'rs*, 162 F.3d 653, 659 (11th Cir.1998) ("[I]n order to survive a defendant's motion for judgment as a matter of law . . . the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim").

**Argument**

First and foremost, judgment should be entered in BSO's favor because the First Verdict was valid and the Court's improper polling led to a second, faulty verdict that should not have formed the basis for judgment. Moreover, the "second" verdict is not supported by the record. Simply stated, there was an insufficient evidentiary basis to impose municipal liability against BSO for a First Amendment retaliation claim under Section 1983. Moreover, there was an insufficient evidentiary basis to justify the amount of damages that were awarded to Plaintiff.

**I.  The Court Should Allow the Judgment on the Jury's True, Original Verdict.**

Once the Jury gave the completed and signed First Verdict form to the Court and the Foreperson confirmed a unanimous verdict, the Court was obligated to follow Fed.R.Civ.P. 49(b)(2) and 48(c). Unfortunately, over BSO's objections, the Court erred and violated both rules.

Rule 49(b)(2) mandates that: "[w]hen the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers." There can be no legitimate dispute that the answers on the First Verdict form were consistent with the Verdict. The Jury found liability by answering "Yes" to questions 1 through 5; determined that Stanley was entitled to compensatory damages by answering Yes to question 6 and filled in the amount on the blank line to be $500,000; determined that Stanley failed to use reasonable efforts to mitigate his damages by answering "Yes" to question 7; and then reduced his damages to $0 due to his failure to mitigate his damages. There is nothing inconsistent with the Jury's answers and a $0 Verdict, the answers were also not inconsistent with each other, and neither party objected to any purported inconsistencies in the First Verdict. "A verdict is inconsistent when there is no rational non-speculative way to reconcile . . . two essential jury findings." *Recker v. Phillip Morris USA, Inc.* 793 F. 3d 1254, 1259 (11th Cir. 2015). "To determine whether a conflict

in the verdict can be reconciled a district court must ask whether the jury's answers could reflect a logical and probable decision on the relevant issues submitted." *Id.* The First Verdict and answers therein were clearly not inconsistent in any way. Further, the Court correctly found that the questions on the Verdict form were not ambiguous. At that juncture the Court was obligated to enter judgment pursuant to Rule 58 in the amount of $0 to Plaintiff.

The only other permissible thing the Court could have done at that juncture was poll the Jury pursuant to Rule 48(c), which the Court chose to do. However, the Court erred in the polling process by asking the Jury an additional question not on the Verdict form that was in essence- are you sure you want to give the Plaintiff $0? The Court should not have asked that additional question and tainted the Jury in doing so. The first 6 jurors answered "Yes", and then the 7th Juror asked the Court to repeat "the question," referring to the additional question, and after the Court did so, she equivocated, and the Jury was sent out of the courtroom.

Thereafter, the Court erred by sending the Jury back to deliberate further in violation of Rules 49(b)(3) and (4). Neither 49(b)(3) or (4) applied because there was nothing on the face of the First Verdict indicating that the answers to the questions were inconsistent with the Verdict, which is required by Rule 49(b)(3), or inconsistent with each other, which is required by Rule 49(b)(4). Neither Rule nor any other rule allows for further deliberations if the answers and verdict are all consistent, which they were. Further neither Rule nor any other rule allows for further deliberations if the jury or a juror provides an inconsistent answer to an additional question not included on the Verdict form. As set forth above, Rule 49(b)(2) applied and was not followed by the Court, and only after a clean polling of the jury (which did not occur), the Court was required to approve and enter appropriate judgment on the First Verdict and answers therein—judgment on

liability in favor of Plaintiff, compensatory damages in the amount of $500,000 reduced to $0 due to his unreasonable failure to mitigate his damages.

## II.     The evidence does not support a finding of municipal liability

"[M]unicipalities may not be held liable for constitutional deprivations on the theory of *respondeat superior*. *Doe v. Sc. Bd.* 604 F.3d 1248, 1263 (11th Cir. 2010). *See Denno v. Sc. Bd. Of Volusia County, Fla.* 218 F.3d 1267, 1276 (11th Cir. 2000). "[M]unicipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479-80 (1986). "Therefore, a municipality may be held liable 'only if such constitutional torts result from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law.'" *Doe*, 604 F. 3d at 1263 (*citing Denno*, 218 F.3d at 1276). Additionally, the Plaintiff must demonstrate that '"the municipal action was taken with the requisite degree of culpability, i.e., that the municipal action was taken with deliberate indifference to its known or obvious consequences."' *Doe*, 604 F. 3d at 1263 (*citing Davis v. DeKalb County Sch. Dist.,* 233 F.3d 1367, 1375-76 (11th Cir. 2000) (internal quotation and citation omitted).

   A.  Sheriff Lamberti did not make the decision not to rehire Plaintiff.

There is simply no evidence to support the contention that the decision not to rehire the Plaintiff was attributable to Sheriff Lamberti—the policy maker. Then-Sheriff Lamberti was appropriately identified as the final policy maker for the agency in the jury instructions, which were agreed to by both parties. The identity of the final policy maker being a question of law for the judge to decide. *Jackson v. City of Stone Mountain*, 232 F.Supp.2d 1337 (N.D. Ga. 2002) ("The determination of whether a municipal employee is the final decisionmaker is a question of law");

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 109 S. Ct. 2702, 105 L.Ed.2d 598 (1989); *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 n. 10 (11th Cir.1991). Moreover, "[w]hether a particular official has final policymaking authority is a question of state law," and should be determined by looking "to state and local positive law, as well as custom and usage having the force of law." *Brown*, 923 F.2d at 1480; *McMillian*, 88 F.3d at 1577. Florida Statute Section 30.53 states the Sheriff is the county's chief law enforcement officer and is the final policymaker for matters concerning the sheriff's office.

The unrefuted testimony of Sheriff Lamberti was clear: he did not direct anyone not to rehire Plaintiff. In fact, Former Sheriff Lamberti had been under the impression that the Plaintiff had been hired in December of 2008, and did not learn until the filing of the instant lawsuit in 2012 that Plaintiff had in fact not been rehired. [Tr. T. Day 2, 56:25-57:11]. There was no documentary evidence indicating that the decision was made by Sheriff Lamberti, and none of the other witnesses offered contrary testimony to refute Sheriff Lamberti.

Two employees from BSO's personnel department testified at trial, but neither had any information based on either personal knowledge or custom that Sheriff Lamberti directed the personnel office or his administration to reject Plaintiff's application for employment. The testimony was that the personnel supervisor, Diana Viscarra, only remembers Plaintiff being unhappy with the salary and the fact that he had made two direct attempts at contacting Sheriff Lamberti directly as the concerns for not rehiring Plaintiff. [Tr. T., Day 2, 15:2-25:1]. Similarly, the Plaintiff himself had no personal knowledge that Sheriff Lamberti directly ordered BSO personnel to deny Plaintiff's application for employment, or if any discussions regarding his application ever even happened. Plaintiff's own assumption is self-admittedly founded upon speculation:

**A:** When the -- anytime in my employment with them, if the XO come up and told me, "Hey, the captain said this," okay, "the captain said this, this is what we're going to do." David Benjamin told me on the phone, "Sheriff Lamberti stated since you didn't support him, he is not going to support you." That would tell me that Sheriff Lamberti told David Benjamin that, and David Benjamin relayed this message.
**Q:** But you don't know if that happened?
**A:** Again, back to --
**Q:** No. It's a "yes" or "no," and then you can explain.
**A:** Okay.
**Q:** Do you know if that happened, if that was spoken -- that that occurred between Sheriff Lamberti and Lieutenant Benjamin?

**A:** No. He did not come right out and say that sheriff actually said that to him. But when he said – when he relayed the message, he said, "Sheriff Lamberti said," quote, "Since you didn't support me, I'm not going to support you." And that told me that the sheriff said that to him.
**Q:** Do you know whether Sheriff Lamberti told Benjamin that you are going to get hired or not?
**A:** Did -- I was going to be hired?
**Q:** Yes.
**A:** No. The -- HR had originally said I was going to be.
**Q:** But if – if – you don't know the – what I'm trying to get at here is you don't know the substance, other than what Benjamin had said to you about this conversation with Sheriff Lamberti about you. You don't know the substance.
**A:** No, I was not there.
**Q:** So you don't know what was actually spoken?
**A:** No. I can only testify to what I was told.

[Tr. T. Day 1, 131:11-132:19].

As repeatedly observed by the Eleventh Circuit and other courts within the district even at the pleading or summary judgment stage, speculation cannot be the sole basis for establishing municipal liability. *See, e.g.*, *Dixon v. Hansell*, 844 Fed. Appx. 198, 203 (11th Cir. 2021) ("The only inference that can be drawn from these declarations is that officers sitting on a CSAB sometimes get outvoted. The declarations offer only speculation as to the nature of CSAB review in general and do not provide any evidence that the CSAB was defective, rigged, or used to ratify an improper motive . . . . For these reasons, Dixon failed to meet his burden to show that Gibson was the final policymaker regarding his termination and, therefore, failed to show that Gibson could

be held liable in his official capacity under § 1983"); *McDowell v. Brown*, 392 F.3d 1283, 1293 (11th Cir. 2004) (holding that a plaintiff had no remedy where he failed to establish the municipality was the "the moving force behind his injury" and that to hold the municipality liable on "mere speculation, would erode its ability to manage and govern"); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993) (affirming dismissal of § 1983 claim against county where plaintiff failed "to allege any facts whatsoever to indicate that the alleged violation was a result of a County policy or practice that would give rise to County liability"); *Coons v. City of Atlanta, Georgia*, 107CV02540RWSLTW, 2008 WL 11333933, at *4 (N.D. Ga. Apr. 25, 2008), *report and recommendation adopted,* 1:07-CV-2540-RWS, 2008 WL 11337299 (N.D. Ga. Sept. 29, 2008) ("Plaintiff has failed to raise his § 1983 claim against Defendant above the speculative level, and therefore his claims . . . fail as a matter of law").

David Benjamin denied telling the Plaintiff he was not being rehired as a result of his campaigning for the opposition and denied being told by the Sheriff that Plaintiff was not to be rehired because of his campaigning activities. In fact, David Benjamin specifically asserted that he did not know who made the decision whether to rehire the Plaintiff, and at some point had been led to believe it was the Plaintiff who rejected reemployment because he was dissatisfied with the rate of pay. [Tr. T. Day 2, 41:19-42:17]. Contrarily, there was absolutely zero testimony or competent evidence to support the contention that David Benjamin was told by Sheriff Lamberti not to rehire Plaintiff at all, more or less because Plaintiff supported the former sheriff's political rival.

Perhaps more significantly, not only was there no evidence that Sheriff Lamberti retaliated against Plaintiff for supporting the former sheriff's political rival, there was no evidence that Sheriff Lamberti was even aware that Plaintiff had exercised his First Amendment Right in the first place. The only evidence was that Former Sheriff Lamberti didn't know whether Plaintiff was in the

crowd. [Tr. T. Day 2, 65:3-13]. Moreover, nobody, not even Plaintiff, was able to identify the timing of the protest in relation to the Plaintiff's reapplication process, which means Plaintiff failed to meet an element of the retaliation claim as no temporal cause and effect timeline has been established. The only competent substantial evidence establishes that BSO did not retaliate against any of the employees who were picketing, Former Sheriff Lamberti was not even aware that Plaintiff was not rehired more or less why the decision not to rehire him was made, and Former Sheriff Lamberti had not even been aware that Plaintiff had in fact supported a political rival. [Tr. T. Day 2, 61:8-65:13]. The Plaintiff himself admitted he did not know when the Sheriff had learned Plaintiff had not been rehired and Plaintiff had no basis to refute Sheriff Lamberti's testimony that he did not direct anyone not to hire Plaintiff. [Tr. T., Day 1, 134:7-12].

    B. There was no custom or policy established.

In order for an action to be a custom or usage, it must be so pervasive, widespread, and permanent that the actual policy makers must have known about it and can thus be held liable for it, even though it was contrary to the policy-makers own policy. *Monell v. Dep't of Soc. Svcs of New York*, 436 U.S. 658, 690 (1978). There is nothing in the record to indicate that there was any custom or policy endorsed by BSO to retaliate in some manner against opponents of an acting sheriff's reelection. Therefore, the fact the Plaintiff was not rehired cannot be attributed to a BSO policy, practice, or custom, because it cannot be found that such alleged retaliation was so widespread, "permanent and well-settled as to constitute a custom or usage with the force of law," that the authority was delegated to a lower-ranking official, or that BSO ratified any alleged retaliation as an official process. *Monell v. Dep't of Soc. Svcs of New York*, 436 U.S. 658, 690 (1978).

    C. There was no delegation of authority.

Similarly, the uncontroverted evidence is not such that a rationale trier of fact could have determined that authority was delegated. Plaintiff testified David Benjamin could not have made the decision himself and it had to come from Sheriff Lamberti:

> **Q:** And you said that that was a decision – to not hire you, was a decision – earlier on direct – that Lt. Benjamin couldn't have made himself. It had to have come from the sheriff. Do you remember saying that?
> **A:** Yes, I do.
> **Q:** But do you know when the sheriff learned that you had not been hired?
> **A:** No, I do not.
> **Q:** Do you have any – do you have any reason to refute if he says he didn't know that Benjami told this to HR?
> **A:** I have no information about that.

[Tr. T., Day 1, 134:1-12].

In order for authority to be delegated, the decision-making body must give the authority to establish the challenged policy to a lower-ranking official whose actions are not subject to review. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006) (holding that a delegation theory only applies "where a group with final policymaking authority delegates its authority to another person or entity, and that person or entity is not subject to any review by the original policymaker.") The Supreme Court has expressed important limitations on the circumstances under which a final decision-maker can be said to have adopted the decisions of a subordinate government employee or official under a theory of delegation:

> Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. It would be a different matter if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker . . . . [T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from a retaliatory motive or other unstated rationale. In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988).

In this case, we know that David Benjamin was not a final decision-maker charged with having put in place a policy of retaliating against individuals who campaigned in favor of the former sheriff's political opponents. Both Former Sheriff Lamberti and David Benjamin testified that Benjamin was not in charge of hiring, which is not disputed anywhere in the record. Even assuming Benjamin did communicate to Plaintiff that Plaintiff was not going to be rehired, that does not mean Former Sheriff Lamberti delegated final policymaking authority to David Benjamin. If so, the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability.

Furthermore, the Eleventh Circuit has "consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." There is no dispute that any decision regarding hiring made by David Benjamin or other administrative officer, if made, was always subject to review by Former Sheriff Lamberti. Put simply, either David Benjamin or other administrative officer might have had some discretion to hire and fire employees, but just because he had discretion does not mean he had final policymaking authority on hiring and firing, and his decisions are still subject to review.

D.  Ratification theory Fails.

Likewise, a theory of ratification requires more than simple acquiescence on the part of the official policy-maker; ratification requires that the policy maker be aware of the action of the lower-ranking official and the underlying motivation for it, and approve both the policy and its basis. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006); *Thomas v. Roberts*, 261 F.3d 1160, 1174 (11th Cir.2001), (vacated on other grounds by, 536 U.S. 953,122 S.Ct. 2653, 153

L.Ed.2d 829 (2002), reinstated by 323 F.3d 950 (11th Cir.2003)); *K.M. v. School Board of Lee County*, 150 Fed. Appx. 953, 958-959 (11thn Cir. 2005).

Here, the jury heard no evidence at all suggesting that BSO or Former Sheriff Lamberti were ever advised that Plaintiff was not rehired, much less the theoretical discriminatory motive that the Plaintiff postulates as to a retaliatory motive based on Plaintiff's campaigning activities underlying the decision.

Since BSO and Former Sheriff Lamberti could not have ratified a policy or practice of which they were not made aware, and since there is not a single piece of evidence suggesting that the former sheriff was aware of the decision not to rehire Plaintiff or an instituted policy to retaliate against supporters of the former sheriff's political rivals, there can be no policy imputed to BSO based on a theory of ratification.

There is no potential theory under *Monell*, either as factually alleged or proved by Plaintiff or as a possible matter of law, that would permit an imputation of municipal liability in this case. Therefore, this Court should grant this Renewed Motion for Judgment as a Matter of Law.

**III.     The evidence does not support the compensatory damages award.**

Even had liability been proven, the damages award is also not supported by the evidence. First, there is no evidence in the record to support the arbitrary amount of $500,000. Second, the only evidence is that Plaintiff failed to mitigate his damages by failing to seek like employment, and therefore BSO is entitled to judgment as a matter of law as to this raised affirmative defense.

The Award is manifestly unsupported by the evidence. A damages award "cannot stand if it: (1) "is so extravagant that it shocks the judicial conscience," (2) "is manifestly unsupported by the evidence," or (3) "indicates the jury was influenced by passion, prejudice or other matters outside the record." *Bravo v. United States*, 532 F.3d 1154, 1161 (11th Cir. 2008). In the instant

case, the Plaintiff put on limited evidence as to monetary damage in the form of lost wages, and almost no evidence for any other basis for compensatory damages, such as mental anguish.

The only evidence admitted at trial by Plaintiff as to his lost wages and benefits is Plaintiff's Exhibit 20, which was a chart with a breakdown of wages and benefits by year from 2008-2013. Plaintiff also introduced his tax returns to show the differential in what he made during those years to be compared with Exhibit 20. Affording Plaintiff the most favorable light of this evidence, the only lost wages damages proved by Plaintiff are his estimates as to what he would have made minus what he actually earned during this time period. This evidence was:

        2008
| | |
|---|---|
| Base salary: | $67,085 |
| FICA taxes: | $2,932 |
| Retirement/Special Risk: | $8,018 |
| H/L/D Insurance: | $13,501 |
| Workers' Compensation: | $4,306 |
| Would have earned: | $5,590.42 |
| actually earned: | $0 |
| difference | **$5,590.42** |

*this number is rounded up in Plaintiff's favor, presuming full month's pay starting December of 2008, so the total $67,085 yearly salary is divided by 12*

        2009
| | | |
|---|---|---|
| Base salary: | $41,452 | |
| FICA taxes: | $3,171 | |
| Retirement/Special Risk: | $8,672 | |
| H/L/D Insurance: | $12,814 | |
| Workers' Compensation: | $4,065 | |
| Would have earned: | $70,174 | |
| actually earned: | $10,900 | (*see* Ex. 23) |
| difference | **$59,274** | |

        2010
| | |
|---|---|
| Base salary: | $41,866 |
| FICA taxes: | $3,203 |

| | | |
|---|---|---|
| Retirement/Special Risk: | $9,742 | |
| H/L/D Insurance: | $12,882 | |
| Workers' Compensation: | $4,306 | |
| | | |
| Would have earned: | $71,999 | |
| Actually earned: | $21,214 | (*see* Ex. 25) |
| Difference | **$50,785** | |

### 2011

| | | |
|---|---|---|
| Base salary: | $42,285 | |
| FICA taxes: | $3,235 | |
| Retirement/Special Risk: | $9,831 | |
| H/L/D Insurance: | $12,551 | |
| Workers' Compensation: | $4,303 | |
| | | |
| Would have earned: | $72,205 | |
| Actually earned: | $33,230 | (*see* Ex. 28) |
| Difference | **$38,975** | |

### 2012

| | | |
|---|---|---|
| Base salary: | $44,829 | |
| FICA taxes: | $3,429 | |
| Retirement/Special Risk: | $6,931 | |
| H/L/D Insurance: | $14,023 | |
| Workers' Compensation: | $4,306 | |
| | | |
| Would have earned: | $73,518 | |
| Actually earned: | $0 | (*see* Ex. 29) |
| Difference | **$73,518** | |

### 2013

| | | |
|---|---|---|
| Base salary: | $48,013 | |
| FICA taxes: | $3,673 | |
| Retirement/Special Risk: | $7,154 | |
| H/L/D Insurance: | $14,806 | |
| Workers' Compensation: | $4,306 | |
| | | |
| Would have earned: | $77,952 | |
| Actually earned: | $0 | |
| Difference | **$77,952** | |

| | total |
|---|---|
| 2008 | $5,590.42 |
| 2009 | $59,274 |
| 2010 | $50,785 |
| 2011 | $38,975 |

    2012          $73,518
    2013          $77,952

**Grand total    $255,309.42**

As for any possibility of potential emotional damages, the Plaintiff provided no evidence other than his own testimony that he was "disappointed" and that his feelings were hurt based on the specific language used in the letter informing him her would not be rehired. The exact testimony was:

> **Q:** Okay. Now, would it be fair to say that not being hired was a big disappointment for you?
> **A:** Yes, because I had given my all to them while I was there and went above and beyond a lot. I had letters of recommendation – or not recommendation, but letters of commendation from my – from my sergeants. I have quite a few of those because they just tolf me, "Do your job." And I went and did my job.
>
> **Q:** You know, a lot of people who lose a job don't ever really come back from it. They – they – their depression, they may not be able to function. They may be bitter.
>
> Did any of those things happen to you or did you just keep muddling through?
>
> **A**: Well, you know, I wasn't – and it's still kind of depressing that, you know, that the bottom of that one letter says that I'm not eligible to work at the Broward Sheriff's Office. And that really bothered me because why am I not eligible? What did I do to have that put on there?
>
> That's the word – that part of the letter was the worst part of that letter, to me. I understand the politics that they were playing, but when you put down there that, "You're not eligible to work here" – and I'm – I'm certified, dual certified. And I didn't do anything wrong. I didn't commit a crime. I didn't do any of that stuff. Why?
>
> And that hurts to – to me – to this day, it still hurts as to why. And we tried to rectify this a few times. And I just – I don't understand it.

[Tr. T., Day 1, 117:5118:6].

As noted by the United States Supreme Court in the context of a Section 1983 claim, "although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury

actually was caused." *Carey v. Piphus*, 435 U.S. 247, 264 (1978). Moreover, though acknowledging that distress is "essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others. Juries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury." *Id*. at fn 20.

The Eleventh Circuit has specifically addressed the exact issue presented here of emotional damages coupled with lost wages under the guidance of *Carey*.

> In the case of emotional distress resulting from a constitutional violation, we are guided by the Supreme Court's decision in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which concluded that compensatory damages for emotional distress may not be presumed from every constitutional violation, but must be proven by competent, sufficient evidence. *Carey* observed that such damages are "customarily proved by showing the nature and circumstances of the wrong and its effect on the plaintiff." . . . . The principles pronounced in *Carey* were applied under similar circumstances by our sister circuit in *Price v. City of Charlotte,* 93 F.3d 1241 (4th Cir.1996). We agree with *Price* in concluding that although a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress based on a constitutional violation, "the testimony must establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated; neither conclusory statements that the plaintiff suffered emotional distress nor the mere fact that a constitutional violation occurred supports an award for compensatory damages." "In marshaling the evidence necessary to establish emotional distress resulting from a constitutional violation, *Carey* instructs us that 'genuine injury' is necessary."

*Akouri v. State of Florida Dept. of Transp.*, 408 F.3d 1338, 1345 (11th Cir. 2005) (internal citations omitted). The *Akouri* court explicitly approved of the Fourth Circuit's amalgamation of factors for determining the propriety of awarding compensatory damages for emotional distress, noting these factors to be:

> (1) whether the plaintiff lost the esteem of his/her peers; (2) whether the plaintiff suffered physical injury as a consequence of her emotional distress; (3) whether the plaintiff received psychological counseling or other medical treatment; (4) whether the plaintiff suffered a loss of income; (5) the degree of emotional distress; (6) the context of the events surrounding the emotional distress; (7) the evidence tending

>  to corroborate the plaintiff's testimony; (8) the nexus between the challenged conduct and the emotional distress; and (9) any mitigating circumstances.

*Id.* at fn 5.

Here, the Plaintiff neither testified nor provided any evidence as to any factors in relation to emotional distress.  Instead, Plaintiff provided mere conclusory statements that he was "disappointed" and "hurt."  This is exactly the type of testimony disapproved of in *Akouri* as insufficient to support an emotional distress damages.

At best, the evidence supports a compensatory damages award of $255,309.42 for a lost wages differential from what the Plaintiff could have earned compared to what he did.  The $500,000 award is manifestly unsupported by the evidence, and therefore cannot stand.

IV.     **The evidence does not support that Plaintiff properly mitigated his damages.**

As to the issue on mitigation, it is well-established that "the principle of mitigation applies to awards of back pay pursuant to section 1983 as well as pursuant Title VII."  *Hayes v. Shelby Memorial Hospital*, 546 F.Supp. 259, 267 (N.D. Ala. Aug. 18, 1982).  The employer bears the burden of proof that an individual has failed to mitigate their damages and it must show that a plaintiff did not make reasonable efforts to obtain comparable work, or that such was available but not sought by Plaintiff.  *Voss v. City of Key West, Fla.*, 24 F.Supp.3d 1228, 1232 (S.D. Fla. Oct. 17, 2014).

An "injured victim has a duty to mitigate damages by being reasonably diligent in seeking substantially equivalent employment."  *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1251052 (11th Cir. 1997).  Regarding a claim for back pay, a plaintiff must make a reasonable and good-faith effort to mitigate damages.  A plaintiff "must mitigate their damages by seeking employment substantially equivalent to the position that was denied.  Substantially equivalent employment is employment that affords virtually identical promotional opportunities,

compensation, job responsibilities, working conditions, and status to those available to employees holding the position from which the Title VII claimant has been discriminatorily terminated." *Richardson v. Tricom Pictures & Productions, Inc.* 334 F.Supp. 2d 1303, 1310 (S.D. Fla. 2004) (internal citations and quotations omitted).

Tantamount to admitting a failure to mitigate damages, the Plaintiff admits that he did not bother to apply for employment with BSO after Israel took office. This is especially damning for Plaintiff, as the Eleventh Circuit has already *indicated in this case* that Plaintiff's claim for injunctive relief is moot because he failed to reapply once Sheriff Israel was sworn in:

> As the record reveals, there are no material facts to support Stanley's claim that Sheriff Israel would continue to retaliate against Stanley now or in the future for his support in the 2008 election. It is undisputed Stanley has not reapplied since Sheriff Israel took office. Further, Sheriff Israel submitted a sworn declaration, undisputed by any material facts that attesting that he "would not have refused to rehire" Stanley based on his support in the election. As the district court correctly held, "Stanley has not offered any evidence that unlawful conduct has occurred at all under Israel."

*Stanley*, 773 Fed. Appx. at 1069. Further, the Eleventh Circuit rejected Plaintiff's reliance on *Ford v. Motor Co. v. EEOC*, 458 U.S. 219 (1982) as the only method to render Plaintiff's claim for injunctive relief moot:

> [O]ne accused of a constitutional violation can stop the continuing accrual of back pay damages by making an unconditional offer of employment -- dealt with one method by which Stanley's claim for injunctive relief could be rendered moot that did not occur. Stanley's failure to reapply with Sheriff Israel once Sheriff Lamberti left office was another way Stanley's claim for injunctive relief could be rendered moot.

*Stanley*, 773 Fed. Appx. at 1069 (emphasis original). The Eleventh Circuit's reliance on Plaintiff's failure to reapply once Sheriff Israel assumed office should apply to Plaintiff's damages claim and is "another way" Plaintiff's damages period could be limited. *Id.*

Thus, since the only record evidence is that Plaintiff never reapplied once Sheriff Israel assumed office, and in fact was hired by another law enforcement/detention agency when he applied

13 ½ years later while this law suit was still pending, the competent, substantial evidence *only* supports a finding that Plaintiff failed to mitigate his damages and his damages period should be limited to the date Stanley was not rehired, December 8, 2008, through and including January 7, 2013, the day before Sheriff Scott Israel was sworn into office. Plaintiff's damages period is limited by the very same logic that mooted Plaintiff's claim for injunctive relief. Accordingly, the award should be drastically reduced, or a new trial just on the issue of damages should be held.

**WHEREFORE**, the Defendant, Sheriff Gregory Tony is his official capacity as the Broward County Sheriff, respectfully requests that the Court enter an Order Granting BSO's Renewed Motion for Judgment as a Matter of Law, enter judgment in favor of BSO notwithstanding the verdict, or, in the alternative, grant other available relief pursuant to Federal Rule of Civil Procedure 50 such as a new trial or remittitur of the unsupported damages award.

DATED this 10th day of November 2023.

> Respectfully submitted,
> **KOPELOWITZ OSTROW**
> **FERGUSON WEISELBERG GILBERT**
> One West Las Olas Blvd., Suite 500
> Fort Lauderdale, Florida 33301
> Telephone No. (954) 525-4100
> *Attorneys for Defendant*
>
> By: /s/ *Alexis Fields*
>     DAVID L. FERGUSON
>     Florida Bar Number: 0981737
>     Ferguson@kolawyers.com
>     SETH D. HAIMOVITCH
>     Florida Bar Number: 0085939
>     Haimovitch@kolawyers.com
>     ALEXIS FIELDS
>     Florida Bar Number: 95953
>     Fields@kolawyers.com

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served upon

all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF on this 10th day of November 2023.

                                         By: /s/ *Alexis Fields*
                                                ALEXIS FIELDS
                                                Florida Bar Number: 95953
                                                Fields@kolawyers.com