UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-CV-62406-ROSENBERG

JEFFREY STANLEY,

    Plaintiff,

v.

BROWARD COUNTY SHERIFF,

    Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION
FOR NEW TRIAL AND DENYING DEFENDANT'S
RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**

**THIS CAUSE** comes before the Court upon Defendant Broward County Sheriff's Office's ("BSO") Motion for a New Trial [DE 396] and Defendant BSO's Renewed Motion for Judgment as a Matter of Law [DE 395]. The motions have been fully briefed. The Court has reviewed the briefing papers, the evidence at trial, and the entire record. For reasons set forth below, both motions are denied.

## I.  BACKGROUND

Plaintiff Jeffrey Stanley worked for Defendant BSO as a detention deputy sheriff from February 2001 through December 2007. Plaintiff ultimately resigned from his position to take a better paying job as director of security at a hospital that was scheduled to open in Miami Beach, Florida. The hospital did not open as planned, and Plaintiff applied for rehire with Defendant on May 2, 2008. On September 25, 2008, Plaintiff received a conditional offer of employment from Defendant, subject to several requirements and a final review of his file.

On October 15, 2008, Plaintiff attended a debate between incumbent Broward County

Sheriff Albert Lamberti and Scott Israel, who were competing for the Office of Broward County Sheriff. Plaintiff wore a T-shirt with "Cops for Israel" imprinted on it. On November 4, 2008, Sheriff Lamberti was reelected. On December 4, 2008, Plaintiff received a telephone call from Defendant's representative informing him that he would not be rehired, allegedly based on his support for Israel. Shortly thereafter, Plaintiff received a letter from Defendant stating that he would not be rehired because areas of concern arose during the selection process.

Thereafter, Plaintiff did not seek employment as a correctional officer in any other counties because he felt that it would be futile based on his ongoing action against Defendant. Prior to the filing of the instant action, Plaintiff pursued an unfair labor practice claim against Defendant before the Public Employee Relations Commission ("PERC"), which he ultimately lost. *See Sheriff of Broward Cnty. v. Stanley*, 50 So. 3d 640 (Fla. Dist. Ct. App. 2010) (reversing the PERC decision that found that BSO committed unfair labor practice when it declined to rehire Stanley).

On December 4, 2012, Plaintiff filed the instant action against Defendant[1] under 42 U.S.C. § 1983, asserting a single freedom of speech claim for violating his rights under the First and Fourteenth Amendments. Specifically, Plaintiff claims that Defendant violated his rights by denying Plaintiff rehire based on his support for Sheriff Lamberti's opposition candidate during the campaign for Broward County Sheriff.

This case proceeded to trial on October 2, 2023. On October 4, 2023, the jury returned a verdict ("First Verdict") finding that Plaintiff proved the necessary liability elements of his 42 U.S.C. § 1983 claim against Defendant. DE 383. Questions 6 and 7 on the verdict form dealt with damages. *See id.* They asked:

> 6. Do you find by a preponderance of the evidence that Mr. Stanley should be awarded compensatory damages?

---

[1] Sheriff Gregory Tony, in his official capacity, has been substituted as Defendant in this action because he is the current Broward County Sheriff. *See* DE 252.

2

> **If your answer is "No," then sign and date this verdict form. If your answer is "Yes," in what amount?**
>
> 7. Do you find by a preponderance of the evidence that Mr. Stanley failed to mitigate his damages?
>
> **If your answer is "No," then sign and date this verdict form. If your answer is "Yes," to what figure should his compensatory damages be reduced?**

DE 383.

In response to Question 6, the jury answered "Yes"—that Plaintiff should be awarded compensatory damages—in the amount of $500,000. *Id.* In response to Question 7, the First Verdict form contained a scribbled-out checkmark next to "No" and a clean checkmark next to "Yes." *Id.* The jury wrote "$0.00" in response to the follow-up question about the reduction in compensatory damages. *Id.*

> 6. Do you find by a preponderance of the evidence that Mr. Stanley should be awarded compensatory damages?
>
>    Yes ✓        No ____
>
> If your answer is "No," then sign and date this verdict form. If your answer is "Yes," in what amount? $500,000.
>
> 7. Do you find by a preponderance of the evidence that Mr. Stanley failed to mitigate his damages?
>
>    Yes ✓        No ~~✗~~
>
> If your answer is "No," then sign and date this verdict form. If your answer is "Yes," to what figure should his compensatory damages be reduced? $0.00

Upon receiving the First Verdict, and before publication, the Court reviewed the verdict form. After reading, the Court stated, "I just want to make sure I understand. Let me just have one

moment." DE 389 at 83:3-4. The Court then instructed the jury to exit the courtroom. *Id.* at 83:5-8. After the jury exited, the Court asked both parties' counsel as to the intention and meaning of Question 7. *Id.* at 83:19-24. Specifically, the Court asked counsel what their intent was with respect to the figure that would be filled in if the jury checked "Yes." *Id.* Counsel provided two different interpretations of that number; Plaintiff's counsel stated that the "amount of the reduction" would be in the blank space, while Defense counsel posited that the figure in the blank should be the amount of the award itself. *Id.* at 85:18-86:18.

Given the differing interpretations by counsel, the Court suggested that the verdict be published with the Court providing the following statement: "Based on the answers to Questions 6 and 7, the total amount to be awarded to Mr. Stanley is blank. [The blank] will be the same number that's in Number 7." *Id.* at 92:3-7. The Court noted that this statement, in conjunction with polling the jury, would make the jury's intent unambiguous. *Id.* at 92:3-14. Plaintiff's counsel agreed. *Id.* at 92:16. Defense counsel objected on the basis that Question 7 was not ambiguous and that the Court's proposed solution would "trigger" the jury as it was "a statement designed to trigger a response." *Id.* at 92:18-94:7. The Court overruled Defense counsel's objection. *Id.* at 94:8-10. Plaintiff's counsel requested polling. *Id.* at 93:13-15.

The jury reentered the courtroom, and the Court published the First Verdict. *Id.* at 94:12-96:8. Immediately after publication, the Court stated, "Based on the answers to Questions 6 and 7, the total amount to be awarded to Mr. Stanley is $0." *Id.* at 96:9-10. The Court then polled the jury. The first six jurors answered the question, "Is this your verdict?" in the affirmative. *Id.* at 96:11-97:5. When the Court reached the seventh juror, the following exchange transpired:

> THE COURT: Juror Number 7, is this your verdict?
>
> A JUROR: I'm sorry. Can you – can you say it – the question again before I answer the question?

4

> THE COURT: Which question?
>
> A JUROR: All of it. That he should be rewarded $0?
>
> THE COURT: The last statement that I said was: "Based on the answers to questions 6 and 7, the total amount to be awarded to Mr. Stanley is $0."
>
> A JUROR: No.
>
> THE COURT: Okay. So that is not your verdict, Juror Number 7?
>
> A JUROR: No. (Shakes head.)
>
> A JUROR: (Shakes head.)
>
> THE COURT: Okay. Let me let you go into the jury room for a moment. Please don't discuss anything, and we will be back with you in a moment.

*Id.* at 97:6-21.

The jury exited. *Id.* at 97:22. The Court noted to the parties and counsel that the verdict was not unanimous. *Id.* at 98:17-18. After some discussion, the Court took a recess. *Id.* at 100:4-6. During that recess, which was for less than half an hour, the Court received a note from the jury which read: "The Jury misread #7. We unanimously agree Mr. Stanley should be awarded the $500,000.00. We read #7 to mean, what amount should be deducted from the awarded am[oun]t." DE 391 Exh. 7; *see* DE 389 at 100:6. After the recess ended, but before the jury returned, the Court read the content of the note to both parties and counsel. DE 389 at 100:6-11.

The jury reentered the courtroom. *Id.* at 104:6. The Court re-read the jury's note aloud and then stated to the jurors that "based on the polling, there was not a unanimous verdict." *Id.* at 104:9-20. Given the lack of unanimity, the Court directed the jury to deliberate further pursuant to Federal Rule of Civil Procedure 48(c). *Id.* at 104:21-105:3. The Court instructed the jury again on the damages portion of the jury instructions that the Court had previously read to the jurors (and sent back with them in written form) before they went back to deliberate. *Id.* at 105:12-107:23.

5

Additionally, the Court gave the jury a new, blank copy of the verdict form to fill out with the exact same questions as the first verdict form. *Id.* at 104:25-105:3; *see* DE 390.  The jury returned with a verdict after fifteen minutes, and the Court published the Second Verdict. *See id.* at 107:25, 111:3, 111:21-113:6.  The jury's responses to Questions 1 through 6 remained the same. *See* DE 383, 390.  In response to Question 6, the jury again answered "Yes"—that Plaintiff should be awarded compensatory damages—in the amount of $500,000. DE 390.  In response to Question 7, the jury answered "No," that Plaintiff did not fail to mitigate his damages, awarding him the full $500,000. DE 390.  The Court adjourned soon thereafter.  DE 389 at 118:17.

On November 10, 2023, Defendant filed a Motion for New Trial [DE 396] and Renewed Motion for Judgment as a Matter of Law [DE 395].

## II.     DEFENDANT'S ARGUMENTS

In its Motion for New Trial, Defendant makes the following arguments: (1) the Court violated Federal Rules of Civil Procedure 49(b)(2) and 49(c) because it was obligated to enter judgment on the First Verdict; (2) the Court incorrectly instructed the jury, permitting them to award lost wages and benefits from the date of the retaliatory conduct up and through the date of their verdict, instead of limiting the time frame to the date Sheriff Israel took office (January 8, 2013); and (3) the clear weight of the evidence did not support the jury's verdict as to liability, the amount of damages, and the fact that Plaintiff properly mitigated damages.

In its Renewed Motion for Judgment as a Matter of Law, Defendant makes the same arguments referenced in the Motion for New Trial, except that argument (2) appears only as part of its argument that the evidence does not support that Plaintiff properly mitigated damages.

## III.     BSO'S MOTION FOR A NEW TRIAL

The Court begins by addressing Defendant BSO's Motion for a New Trial.

### A.     *Procedural Issue*

Defendant contends that the Court violated Federal Rules of Civil Procedure 49(b)(2) and 48(c). The Court addresses each argument in turn.

Defendant first argues that the Court was obligated to enter judgment under Rule 49(b)(2) because the First Verdict was consistent. Indeed, Rule 49(b)(2) states that "[w]hen the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers." Fed. R. Civ. P. 49(b)(2). Here, the Court made no decision as to the First Verdict's consistency. Rather, the Court proceeded by polling the jury under Rule 48(c). And Defendant recognizes that polling the jury was a proper option exercised by the Court after the jury returned the First Verdict. *See* DE 396 at 3 ("The only other permissible thing the Court could have done at that juncture was poll the jury pursuant to Rule 48(c), which the Court chose to do."). Therefore, Defendant's first argument holds no weight.

Next, Defendant argues that the Court's polling procedure was improper. Defendant contends that "the Court erred in the polling process by asking the Jury an additional question not on the Verdict form that was in essence—are you sure you want to give the Plaintiff $0?" *Id.* However, the Court did not ask the jury this question; instead, the Court restated to each juror, "Based on the answers to Questions 6 and 7, the total amount to be awarded to Mr. Stanley is $0." DE 389 at 96:9-10. Defendant provides no case law supporting its contention that such a statement is an improper use of the Court's discretion in polling the jury. Instead, the Eleventh Circuit has noted district courts have flexibility in formulating a jury poll, so long as the poll's objective is to ascertain that the verdict is unanimous rather than to strong-arm jurors into modifying their votes. *See Green v. Zant*, 738 F.2d 1529, 1537-38 (11th Cir. 1984) ("Unless the trial judge's interrogation serves to coerce a reluctant juror into changing his vote, . . . *any formulation that meets that end* is

permissible." (emphasis added)).  Here, the Court properly restated the verdict and the award amount on the form during polling to generate greater clarity in determining whether the First Verdict was unanimous.  There was no coercion.

The Court also proceeded properly after polling the jury.  Rule 48(c) states that "[a]fter a verdict is returned but before the jury is discharged, the court must on a party's request, or may on its own, poll the jurors individually. If the poll reveals a lack of unanimity or lack of assent by the number of jurors that the parties stipulated to, the court may direct the jury to deliberate further or may order a new trial." Fed. R. Civ. P. 48(c).  After polling, the Court found that the jury lacked unanimity.  In fact, during the short recess that followed, the jury sent the Court a note confirming that they had misread Question 7.  From the note, it was apparent to the Court that the jury did not understand Question 7 of the First Verdict and that their intention was to award Plaintiff $500,000.  Nevertheless, the Court strictly followed the procedure outlined in Rule 48(c), directed the jury to deliberate further, and provided a new, blank verdict form to complete.  In other words, the Court wanted to ensure that the jury's verdict was memorialized in a verdict form and not in a note to the Court.  The jury completed the new form, the Second Verdict, and reached a unanimous verdict. The Court acted properly and within the bounds of the Federal Rules of Civil Procedure. Defendant's argument is again unpersuasive.

      B.     *Jury Instruction Issue*

Defendant argues that the Court erred by instructing the jury that damages for lost wages and benefits should be determined "from the date of the denied rehiring to the date of [its] verdict." DE 381.  Instead, Defendant argues, the Court "should have limited that time frame to the date Sheriff Israel assumed office (January 8, 2013)." DE 396 at 2.  In support, Defendant invokes an Eleventh Circuit decision in this case determining that Plaintiff's claim for *injunctive relief*

8

(reinstatement) was moot, as he did not reapply to BSO when Sheriff Israel assumed office. *See Stanley v. Broward Cnty. Sheriff*, 773 Fed. App'x 1065, 1069-70 (11th Cir. 2019).

When Defendant raised this argument at trial, the Court overruled the objection, noting that (1) this was essentially a mitigation argument to be determined by the jury; and (2) while the Eleventh Circuit limited Plaintiff's right to injunctive relief due to his failure to reapply to BSO, it placed no such restriction or limitation on damages for the dates after Sheriff Israel took office. *See* DE 388 at 125:10-127:6. The Court also noted that the language used was consistent with the pattern instructions on compensatory damages. *Id.* at 126:21-127:1. For the same reasons, the Court remains unpersuaded by Defendant's jury instruction argument.

### C. Weight of the Evidence Issue

Defendant argues that the jury's verdict was against the clear weight of the evidence on several issues. A new trial should not be granted "unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC.*, 684 F.3d 1211, 1231 (11th Cir. 2012). Although the Court is permitted to weigh the evidence, it must do so with this standard in mind. *See Watts v. Great Atl. & Pac. Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir. 1988) ("In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence, but to grant the motion he must find the verdict contrary to the great, not merely the greater, weight of the evidence.").

Upon review of the record, the Court finds there was competent evidence to support the jury's verdict. Accordingly, the Motion for New Trial is **DENIED**.

### IV. BSO'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

The Court now turns to Defendant BSO's Renewed Motion for Judgment as a Matter of Law. When ruling on a renewed motion for judgment as a matter of law after a jury verdict, "a

court's sole consideration of the jury verdict is to assess whether that verdict is supported by sufficient evidence." *Chaney v. City of Orlando, Fla.*, 483 F.3d 1221, 1227 (11th Cir. 2007). Therefore, for the same reasons the Court has denied BSO's Motion for New Trial, BSO's Renewed Motion for Judgment as a Matter of Law is also **DENIED.**

## V. CONCLUSION

This case was filed over eleven years ago. For more than a decade, the parties have engaged in active litigation, including two jury trials and two appeals to the Eleventh Circuit. Despite this, on October 4, 2023, a jury nearly rendered a verdict that it did not intend after misreading a question on the verdict form. The Court proceeded prudently by polling the jury of seven when requested, ultimately revealing not only a lack of unanimity but that the jury, in fact, wished to award Plaintiff $500,000. The jury then returned a final verdict doing so. If Plaintiff had not requested polling, and if the seventh juror had not spoken up, Plaintiff could have walked away after eleven years of litigation with nothing, even though that was not the will of the jury. Instead, justice was served.

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant BSO's Motion for a New Trial [DE 396] and Renewed Motion for Judgment as a Matter of Law [DE 395] are both **DENIED**.

**DONE AND ORDERED** in Chambers in West Palm Beach, Florida, this 26th day of January, 2024.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE